The first case, or the next case, will be Hargrove v. The Commission, Case No. 513-302. Counsel, you may proceed. Good morning, Counsel. May it please the Court. My name is Mike Holt. I'm an attorney, and I represent WATCO in this appeal, who's the appellant. Briefly on the procedural history, the case was tried before Arbitrator Kinnaman. She rendered an award favorable to WATCO. It was tried on a 19B hearing. Petitioner basically was seeking interim relief for an award of the Commission. Compelling respondent to pay for left knee treatment. Arbitrator Kinnaman denied the 19B hearing to that extent. The case went on appeal. The Commission basically adopted the decision of Arbitrator Kinnaman, so her decision became the decision of the Commission. Petitioner then took an appeal to Madison County Circuit Court, and we appeared in front of Judge Crowder. Issues were briefed, and Judge Crowder reversed the decision of the Commission. There was a petition for a hearing that I filed, which she denied, but she modified her first decision, striking the remand language, basically at my request, and that was by agreement, so that we could come up to this Court without further delay. So you don't find there's any jurisdictional issue? I do not. I'm hoping the Court does not. Well, it would result in formal resubstance. I mean, this doesn't contemplate future hearings? And medical issues? It absolves it, because if this Court were to affirm the Circuit Court ruling, at this point the respondent is on the hook for the left knee treatment that Dr. Rogalski may prescribe. And, you know, I thought it was exalting. Well, I thought it was not necessary for us to go back down to the Commission just for the Commission to enter an award of future medical care when that issue was already before the Commission, and I thought it was before the Circuit Court. If the Circuit Court was going to reverse on medical causation and find the condition work-related, then the Circuit Court could certainly have the further order entered that respondent should pay for that treatment. So you artfully drafted the order to avoid that problem? Yes. By agreement, I should add. Okay. So that's the procedural history, and hopefully the Court isn't going to find a jurisdictional issue and send us all back down. And I always understand the Court has to address jurisdiction. So it's our basic contention on appeal that in reviewing the Commission order, it's not against the manifest way of the evidence. The petitioner says he tripped over this beam coming into work. It was dark. He stumbled. He didn't fall. He filled out an accident report, talked about right flank pain. The accident report was on the same day of the accident. But he doesn't mention left knee pain. Is that fatal? No, it's not. But it starts the process of adding kernels of doubt to this case. The next critical fact is about a month later, he goes to the emergency room, and he mentions the right flank pain, doesn't mention left knee pain. Of course, we're all here because he wants treatment for the left knee. So when you start looking at this case and asking someone, okay, you say you hurt your left knee. Shouldn't you report that in the accident report? He doesn't. Let me just try and make this as simple as I can. Doesn't this case just boil down to two competing medical opinions? Agreed. Rogalski says there's a cause of connection. Wayne says attributed solely to degenerative changes due to advanced osteoarthritis. The commission agrees with Wayne, and the circuit court decides to adopt Rogalski. I think the case is two competing medical opinions, but what Judge Crowder did is she found a CISPRO violation. She thought my doctor on cross, there was a question, and it's in the brief, and Ms. Moss's partner, Mr. Schroeder, asks the doctor on cross, well, what if the testimony of trial is, you know, that there's co-workers that testify that, you know, after this accident, his left knee pain was worse, you know, worse than before? Wouldn't that change your opinion, doctor? And the doctor then goes on and answers the question. The petitioner was the only witness to testify. There never was any co-workers that came out and said, yeah, in fact, he told us that his pain was worse after this accident. So it was a hypothetical question asked on cross, and the core facts of the hypothetical were never proven out. But as part of that answer... Well, the commission never found... No, you're right. There was no finding by the commission, as the circuit court might have suggested, that the reason they denied liability was because a normal everyday activity could have resulted in the injury. They denied it because they found the claimant failed to establish an accident that caused the injury to his left knee. I agree, Your Honor. I agree. That's my whole thrust. The CISPRO case has a... I call it the CISPRO two-step. You know, step number one is that the work accident is a causative factor, so medical causation is established. What CISPRO says you can't do then is do the second step, which is that normal daily activity would cause the same diagnosis. Just because that may be true doesn't go back and negate step number one, which is that medical causation was established. So that's the whole problem with Petitioner's theory of the case, is that in Dr. Wayne's opinion, there was no causation ever established. There never was any evidence that he had worsening complaints. There never was immediate medical care. He continued to work four and a half months at a job where they fixed railroad cars. It's very physically demanding work. So I believe what happened here was the judge saw my doctor talk about normal daily activities. She sees in the CISPRO case the phraseology, normal daily activities, and she links them together and thinks there's a misapplication of a law, and that's how she gets around what I think is a stand-alone review, which is manifest way to the evidence. My basic argument is there was no misapplication of a law by the commission. The commission is well aware of CISPRO. We're all aware of CISPRO. It's controlling law. They never addressed it in the decision. And I think the circuit court judge, in all candor, overreached. And what I'm asking for in terms of relief is just reinstatement of the commission's decision. It was not against the manifest way to the evidence, and there was no error of law regarding CISPRO. So hopefully, again, the court doesn't think there's a jurisdictional issue. I don't think there is. But getting over that point, we would ask that this court reinstate the commission's decision, either reverse or vacate what they did in Madison County. So barring any further questions, thank you. Thank you, counsel. We'll have time in reply. Counsel, you may proceed. May it please the court, Mr. Holt. My name is Mary Massa, and I represent the appellee, Ronnie Hargrove. So if we're going to look at causation first, notwithstanding this normal daily activity language that was part of Dr. Wayne's opinion, if you look at the causation analysis, Dr. Wayne versus Dr. Rogowski, Dr. Wayne's opinion, it's our contention, was still based on some speculative and conjecture, and that's the kind of stuff that cannot support an expert's opinion. Is the only thing Dr. Wayne does now is independent medical examiner? Yes, that's correct. I believe he testified he was 75 years old, so he took himself out of the surgery aspect of being an orthopedic surgeon. Ms. Massa, do you know what Judge McCullough would say if he were here? Do you know what Judge McCullough would say if he were here? No, sir, I don't. You couldn't even convince Arbitrator Kinneman. And if a petitioner can't convince Arbitrator Kinneman, you've got a problem. That's sort of a loaded question. I apologize for not knowing the significance of that, but in any event... Time marches on. We get too old when we know these people, don't we? And I apologize because I don't try cases in front of the arbitrators. I do the appellate part. But she was a commissioner for many, many years. Okay, and I'm sure she's very learned. Very learned and very pro-petitioner. But notwithstanding that, if you look at the opinion of Dr. Wayne, and it's our contention that it's based on several aspects of speculation and conjecture, those are the kinds of things that cannot support an opinion, and that's the kind of thing that the commission can't rely on in making a finding. I'm listening to this go back and forth as a discussion between a battle of the experts. Now, maybe there's something missing here, but it seems to me, in reviewing the record, that it establishes the claimant did not report a left knee injury at all to the employer until three and a half months after the accident occurred. Although he testified he had left knee pain right before he left the hospital examination room, I believe the hospital's records do not support that testimony. They contradict that. So wasn't the arbitrator and the majority of the commission troubled by the fact, aside from the battle, that there was some credibility issues with the claimant? Isn't that in the mixer? Credibility is in the mixer. That is true. But each of the aspects of the delay in treatment and of not mentioning anything in the treatment once it was first initiated at the walk-in clinic and then at Alton Memorial. Is that somehow explained by the claimant? It is, Your Honor. He did state that he mentioned it at the hospital, that he was having left knee complaints. But he also testified, and he also reported both to Dr. Rogalski and to Dr. Wayne, that the left knee complaints initially were not that bad. But they gradually grew in intensity, and they also started affecting him mechanically. He started having his knee locking up. He started having it going out. It started affecting his ability to do a job as a repairman at this plant, where he had to do a lot of climbing and kneeling and crawling and activities which placed a lot of stress on the knee. Now, while he didn't have initial complaints that were very strong in his knee, rather in his back, and he testified that he was mostly concerned about his back complaints at that point because he had had prior back surgery. And so that was the initial focus that he had. He did not seek immediate medical treatment, and he testified as to the reason why. He testified that at this particular plant, there is a procedure that they stress with their employees that if you have some kind of an injury, sprain or strain type of injury, you should self-treat it. You can walk around and you can take a walk. They won't treat you. Rest, ice, compression, elevation. And did the claimant testify as to this procedure at the plant? Yes, he did, your honor, and that was unrebutted. So you would make the argument that the claimant gave a plausible explanation for the delay in reporting. And yet, how do you respond to the question, well, does the commission have to believe that testimony? The commission should believe that if it's unrebutted testimony, your honor. That's my position. I mean, if there's anybody to come forward and say, oh, yeah, we saw Mr. Hardgrove before this accident and he was hobbling around and he was having trouble with his knee. But no, he reported both to Dr. Wayne and to Dr. Rogalski that he was totally asymptomatic with this knee prior to the accident. It wasn't until after the accident that he started having the knee complaints, albeit small ones at first, which was consistent clinically with what Dr. Rogalski found. A small meniscal tear could be asymptomatic at first, Dr. Rogalski testified. And he said as the knee was used and stressed, that tear would grow. And that is exactly clinically how my client presented in his medical treatment. The knee complaints started to grow. He started having mechanical complaints. He wasn't, and this is also part of the delay in treatment, he did not have a primary care physician. So his only recourse was to go into a walk-in clinic, go to the emergency room, and then finally when he was able to get into a primary care doctor, his knee complaints were of such significance that he reported them. And that's why he was referred to Dr. Rogalski, an orthopedic surgeon, for evaluation. So if we asked you to summarize precisely why the commission's decision was against the manifest way of the evidence, what would you tell us? I would say, first of all, you have to look at what it was based upon. Dr. Waynes was advised that my client was asymptomatic prior to the accident, but yet he totally disregarded that and said, in my opinion, this man's knee was so bad, after the 2005 surgery, that he would have pain with any daily activity. That was totally against the manifest way of the evidence.  Exactly, there was a foundation problem, that particular foundation problem. There was also foundation problems with regard to something that did affect the CISPRO case, and that is the standard on causation having to be a cause in the resulting condition of ill-being, as opposed to a primary cause or a sole cause. Now, Dr. Waynes said, in order for there to be aggravation in this case, it would have had to have been a fracture of some kind of a chondral process within the knee, or it would have had to have been some kind of a torn ligament, something that would have been a very serious injury. He wouldn't concede that a meniscal tear, which was absolutely confirmed on the MRI, a meniscal tear could be internal derangement. Well, it was internal derangement when Dr. Segrist did surgery on this man in 2005. It was on a torn meniscus. And by the way, in 2005, when he went in for that surgery, he was unable to kneel, he was unable to crawl, he was unable to squat, and he had an antalgic gait. He was limping. After that surgery, he was able to return without restrictions to that job, and without symptoms, according to my client, and that testimony was unrebutted. So if you look at the foundation for Dr. Wayne's opinion, and you look at the foundation for Dr. Rogalski's opinion, Dr. Rogalski's opinion is the one that is supported by the manifest weight of the evidence, not by speculation or conjecture. And then furthermore, Dr. Wayne said that he would have expected that this knee would have looked that way right after that 2005 surgery. Well, what's that based on? It's based on nothing. He looked at an operative report and said he would have expected that that MRI that was done after the accident would have looked exactly the same after the 2005 surgery. But did he look at the arthroscopic films from that surgery to make that pronouncement? Did he look at an MRI that was done shortly after that 2005 surgery to make that pronouncement? No. He said that he would have expected that to look that way just based on how he read the operative report. Didn't Dr. Wayne's causation opinion, wasn't it, based on the claimants' available medical records, including the recent MRI and Dr. Seacrest's 2005 medical report following the surgery? What he had available to him, Your Honor, was the operative report as well as I believe there was a history of physical when he went into Alt Memorial. No MRI? There was no MRI in that, Your Honor. No MRI whatsoever after the surgery. There may have been an MRI prior to the surgery that would have showed the meniscal tear, but after that tear was repaired, there was no MRI showing the condition of the knee after the surgery until after the accident in 2010. And that's what I'm saying. His opinion is without foundation. It's based on speculation and conjecture. The commission cannot base a causation opinion on speculation, conjecture, and an opinion without foundation. And so that's why it's our position that Judge Crowder did get this right in saying not only was there an error at law made by the commission because of the violation of CISPRO with the normal daily activity as well as it only having to be a cause in the resulting condition of ill-being, but it's also our position that she was correct in finding that the overwhelming evidence supported a finding that causation was proved by my client in this case, based on Dr. Wayne's opinion being full of holes, being full of lack of foundation, and full of conjecture. So what we are asking you to do is to affirm the decision of the Third Judicial Circuit of Madison County, which reversed the commission, and we ask that that be affirmed. Thank you. Thank you, counsel. Counsel, you may reply. It is hard to win in front of just arbitrator Kinnaman. I think the reason why she ruled the way she did is she just didn't believe the petitioner. When he was trying to explain away why he didn't report left knee pain in the accident report, you know, why he didn't report left knee pain when he went to the emergency room a month later and only talked about right flank pain. So it wasn't just a battle of the experts, was it? No, there was credibility in the mix. Credibility of the petitioner was in the mix in terms of him, you know, trying to say he didn't go to the doctor sooner because he didn't have one, that he had mentioned to the ER doc that he had left knee pain, but the record is absolutely silent on left knee. When he goes to the ER, he talks about right flank pain, which is in the accident report, so obviously he is talking about pain that he had because of this accident, but somehow nothing about the left knee. And those are the same facts that my doctor, Dr. Wayne, relies upon, that if you are going to say you hurt your left knee, shouldn't that be in the accident report? Shouldn't there be some evidence of an injury to the left knee? And there just wasn't in this case. Regarding the basis for Dr. Wayne, I supplied to him the treatment records, I supplied to him the MRI film taken after the accident, and I supplied him the records associated with the 05 earlier left knee surgery, including the operative report. Orthopedic surgeons rely on those type of documents in forming opinions. The left knee operative report from 2005 is probably the best evidence of what the surgeon found in the knee itself when he opened it up. So when he is saying this man has advanced degeneration back in 05, he is basing that on an actual medical record, which is the operative report, and it showed grade 3, grade 4 chondromalacia and all kinds of other findings. So the doctor did have adequate foundation to render his opinions in this case. In regards to the MRI that you indicate that Dr. Wayne was privy to, do you know the date of that MRI? Yes, I do. The left knee MRI was post-accident, and it was March 25, 2011. So he and Dr. Rogalski both looked at the same MRI. It was the only one that really exists in this case. So he did review that, and he talks about it in his report. He talks about it in deposition. So in summary, I would again ask that the commission decision be confirmed or reinstated, and that the two orders of Judge Crowder and Madison County be vacated. Thank you. Thank you, Counsel Volk, for your arguments. This matter will be taken under advisement, and this position shall issue.